Jimmie Doyle BACCUS, Appellant,

v.

Gloria Eloise BACCUS, Appellee.

No. 09–89–119 CV.

Court of Appeals of Texas, Beaumont.

April 25, 1991.

Donald M. Brown, Conroe, for appellant.
Jimmie P. Price, Conroe, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

This is a divorce action in which Appellant, Jimmie Doyle Baccus, the Defendant below, seeks reversal of the judgment of the trial court so that the matter may be remanded for new trial. The Appellant contends that the trial court erred in awarding the Appellee her one-half interest in the retirement benefits based on the September 6, 1988 value rather than the June 1, 1987 agreement and that the Appellant should not be assessed all of the federal income tax liabilities of the parties from the date of the marriage through December 31, 1986. The trial judge signed the final decree of divorce on January 6, 1989.

The Appellant and Appellee were married on or about April 17, 1964. They separated and ceased to live together as husband and wife on or about February 24, 1986. They are parents of three children. However, at the time of the filing of the final decree of divorce, only one child was under the age of eighteen years, Melanie Lane Baccus. Appellee filed for divorce on March 3, 1986.

The Appellant, on March 17, 1986, timely filed his answer by general denial and also filed his cross-action for divorce, which was later abandoned. On June 1, 1987, the Appellant and the Appellee appeared before Judge Lynn Coker for a final, uncontested hearing on the merits of the divorce case. The Appellant and the Appellee announced their agreements as to conservatorship and support regarding the minor child and as to division of most of the community estate of the parties.[1]

On June 1, 1987, Judge Coker announced that he was granting the divorce and approved the parties' agreement. The bulk of the community estate consisted of the community homestead, the Appellant's re-

tirement plan through his employers, IRA accounts, cash and savings and shares of corporate stocks and mutual funds. The Appellant and the Appellee agreed to divide the community assets equally between them. The Appellant and the Appellee did not agree, as of June 1, 1987, to assume one-half (½) of any prior years' income tax liabilities. They had only agreed to divide any income tax refunds for 1986. Importantly, no agreement of any sort was dictated into the record, or approved by Judge Coker or the parties, concerning the tax liabilities of the parties for 1987 and any prior tax years. Furthermore, they had only agreed to divide the specific refund on a 50/50 basis at the first hearing on June 1, 1987.

Shortly after the June 1, 1987, hearing, the Appellant and the Appellee did equally divide the cash accounts, stocks and bonds, etc., with each party receiving approximately $65,000 in cash, plus various IRA's of equal value and stock. The Appellant and the Appellee each received a total amount of approximately $100,000.

The Appellant resumed occupancy of the homestead when the Appellee moved out after five months of occupancy. The Appellant also assumed the payment of the monthly mortgage.

The case at bar was called for trial on the merits on September 6, 1988, in the 2nd 9th Judicial District Court, Judge John C. Martin presiding. The parties appeared in person and with their respective attorneys and announced ready for trial. Neither the Appellant nor the Appellee submitted a proposed Final Decree of Divorce at a prior hearing on June 1, 1987. Also, neither filed a Motion to Enter Judgment based on the proceedings of June 1, 1987.

The Court assessed the following after the September 6, 1988, hearing: that the entire prior tax liability be assessed against the Appellant; awarded the community homestead, subject to the mortgage, to the Appellant; and, divided the retirement ben-

---

1. Appellant and Appellee did not recite the entire agreement in specific detail as it is clearly noted in the Statement of Facts of the June 1, 1987, hearing. Also, there was absolutely no mention whatsoever, by either party, as to how the 1986 or 1987 and prior years' tax liabilities would be handled.

efits equally between the Appellant and the Appellee based on the September 6, 1988, accrued value rather than the June 1, 1987, accrued value.

On February 3, 1989, the Honorable John C. Martin made, and thereby stated, relevant Findings of Fact and pertinent Conclusions of Law:

## FINDINGS OF FACT

. . . .

9. On June 1, 1987, Petitioner and Respondent appeared in person and by and through their respective attorneys, Jimmie P. Price on behalf of Petitioner and Donald M. Brown on behalf of Respondent, and advised the 9th Judicial District Court, the Honorable Lynn Coker, Presiding, that an agreement had been reached between the parties on all issues pertaining to conservatorship and support of the child, division of community property, attorneys fees and income tax liabilities.

10. On June 1, 1987, Judge Lynn Coker granted a divorce to the parties and approved the agreements as requested and made a docket entry to that effect, and requested that the agreement be reduced to writing and signed by both Petitioner and Respondent and their respective attorneys before submitting the Decree of Divorce to Judge Coker for his approval.

11. At no time did either Petitioner or Respondent submit a proposed Final Decree of Divorce to Judge Lynn Coker for signature, approval, or entry, nor was a Motion to Enter a Final Decree of Divorce filed by either party.

12. Between the period of time from June 1, 1987, and September 6, 1988, both Petitioner and Respondent revoked their consent to portions of the agreement reached on June 1, 1987, and such partial revocation was allowed by this Court.

13. On September 6, 1988, this case was called for trial on the merits, and Petitioner and Respondent each appeared in person and by and through their respective attorneys and each announced ready for trial.

. . . .

25. On June 1, 1987, there was a potential tax liability owed by Petitioner and Respondent which was not disclosed by either Respondent or his attorney.

26. Respondent intentionally and knowingly withheld income tax liability information from Petitioner.

27. From June 1, 1987 to September 6, 1988, Respondent allowed the income tax liability, including penalty and interest, to increase substantially.

28. Respondent was aware of the income tax liability and received notice of same from the Internal Revenue Service.

29. Respondent took no steps to pay the income tax liability, including penalty and interest, when it was at its lowest amount, even though he had sufficient funds to do so.

30. Respondent could have paid the income tax liability, including penalty and interest, and could have requested entry of Decree of Divorce based upon the agreement of June 1, 1987, but did neither.

31. Once Petitioner received notice of the tax liability, she delivered the notice to Respondent.

32. Each party specifically repudiated that portion of the agreement of June 1, 1987, and such was allowed by the Court on September 6, 1988.

33. Repudiation of the previous agreement of June 1, 1987, was evidenced by testimony in Court on September 6, 1988, and by virtue of the fact that neither Petitioner nor Respondent requested entry of a proposed Final Decree containing the terms pertaining to the tax matters.

. . . .

35. Respondent intentionally and knowingly withheld information about personal income tax liability owed by the parties prior to and during settlement negotiations and for a period of time after June 1, 1987.

36. The personal income tax liability of Petitioner and Respondent is derived

from an investment by Respondent into a tax shelter and this investment was made by Respondent without the knowledge of Petitioner.

37. Petitioner would not have agreed to be responsible for one-half of the personal income tax liabilities owed by the parties up through June 1, 1987, had the tax liability information been disclosed by Respondent.

38. The information concerning the personal income tax liability owed by Petitioner and Respondent was material information.

39. Awarding of the personal income tax liabilities owed by the parties through June 1, 1987, as being the sole and separate responsibility and liability of Respondent, was just and right having due regard for the rights of each party and the child.

. . . .

## CONCLUSIONS OF LAW

. . . .

4. That the evidence is sufficient as a matter of law to justify and sustain the findings that the agreement of June 1, 1987, was repudiated in part and re-ratified in part on September 6, 1988;

. . . .

8. That the evidence is sufficient as a matter of law to justify and sustain the findings that the Respondent invested into a tax shelter without disclosing same to Petitioner and such investment was the contributing cause to the tax liabilities of the parties;

9. That the evidence is sufficient as a matter of law to justify and sustain the findings that the Respondent withheld from Petitioner information concerning the tax liability resulting from investment in the tax shelter during negotiations prior to and through June 1, 1987, and shortly thereafter;

10. That the evidence is sufficient as a matter of law to justify and sustain the findings that Petitioner would not have agreed to be responsible for one-half of the personal income tax liabilities owed by the parties up through June 1, 1987,

had the tax liability information been disclosed by Respondent;

11. That the evidence is sufficient as a matter of law to justify and sustain the findings that the information concerning the personal income tax liability owed by Petitioner and Respondent was material information;

12. That the evidence is sufficient as a matter of law to justify and sustain the findings that awarding of the personal income tax liabilities owed by the parties through June 1, 1987, as being the sole and separate responsibility and ability of Respondent and denial of any claim for attorneys fees was just and right having due regard for the rights of each party and the child.

■ The law in Texas is that, when findings of fact and conclusions of law are filed in conjunction with a statement of facts, these findings will be sustained if there is any evidence to support them. *Gulf Freeway Lbr. Co. v. Houston Invest. Rlty. Trust,* 452 S.W.2d 39 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ). These findings of fact have the same force and dignity as does a jury verdict upon special issues and, when the trial court's findings and conclusions are supported by competent probative evidence, they should not be disturbed on appeal unless they appear to be against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *See Linder v. Hill,* 673 S.W.2d 611 (Tex.App.—San Antonio 1984) *aff'd* 691 S.W.2d 590 (1985).

■ The Appellant contends, in his first point of error, that the trial court was mistaken when it used the September 6, 1988, value rather than the June 1, 1987, value in awarding the Appellee her one-half (½) interest in the accrued retirement benefits. The Appellant undertakes to reverse the judgment by arguing on the ground that a settlement agreement had been reached and agreed to by the Appellant and the Appellee as of June 1, 1987, in open court and, because of such, the trial court was without authority to impose any new condition not agreed upon between the par-

ties. Also, the Appellant undertakes to argue that a final judgment was founded upon the settlement agreement as reached by the parties and that agreement must be strictly complied with.

There was no final judgment as to the June 1, 1987, court proceeding since the transcript is devoid of any such instrument. Also, there was no proposed written Final Decree of Divorce submitted to the trial court until after the September 6, 1988, court proceeding. The record is clear that neither Appellant nor Appellee submitted a proposed written decree of divorce after June 1, 1987. This evidence is clearly shown through the testimonies of the Appellant and the Appellee at the September 6, 1988, court proceeding.

The trial court found, in its findings of fact, that at no time did either the Appellant or the Appellee submit a proposed Final Decree of Divorce to the trial court for his signature, approval or entry, nor did the Appellant nor Appellee file a Motion to enter a Final Decree of Divorce. Further, the trial court found that the Appellant and Appellee had revoked their consent to portions of the agreement reached on June 1, 1987, between the time period of June 1, 1987, and September 6, 1988, and that such partial revocation was allowed by the court. The trial court further found that, on September 6, 1988, this case was called for trial on the merits and both the Appellant and the Appellee appeared in person and by counsel and each announced ready for trial. The trial court found that on June 1, 1987, a divorce was granted by Judge Lynn Coker and he approved the agreements as requested and made a docket entry to that effect; also, that Judge Lynn Coker requested that the Appellant and the Appellee reduce the agreement into writing and that same be signed by each of them and their respective attorneys before submitting the Decree of Divorce to him for his approval.

■ We hold that the words of Judge Coker, on June 1, 1987, "Divorce granted and agreement approved" were not effective to render judgment, especially in light of Appellant submitting to a divorce trial on the merits on September 6, 1988, without any kind of objection whatsoever. An agreement for judgment will not be enforced unless the agreement is reduced to writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record. *See Kennedy v. Hyde*, 682 S.W.2d 525 (Tex. 1984). TEX.R.CIV.P. 11. Furthermore, a judgment cannot be rendered on an agreement, even if TEX.R.CIV.P. 11 is complied with, if consent by one of the parties has either been withdrawn or lacking and even though such consent may have earlier been given. *See Carter v. Carter*, 535 S.W.2d 215 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Notwithstanding a valid TEX.R. CIV.P. 11 agreement, consent must exist at the time an agreed judgment is rendered. *See Kennedy v. Hyde, supra.* It is well established that a party may revoke its consent to settle a case at anytime prior to the rendering of judgment. *Samples Exterminators v. Samples*, 640 S.W.2d 873 (Tex.1982). We hold that any consent by the parties as to the June 1, 1987, agreement was effectively withdrawn on September 6, 1988.

■ Furthermore, any trial court's findings and conclusions which were not challenged by any point on appeal must be accepted by this intermediate appellate court. *See* TEX.R.CIV.P. 299; *Curry v. E.E. Stone Lumber Co.*, 218 S.W.2d 293 (Tex. Civ.App.—El Paso 1948, writ ref'd n.r.e.). Any material findings of fact must be challenged on appeal by appropriate points in the Appellant's brief or else the Appellant is bound by the findings. *See Bandas Industries v. Employers Fire Ins. Co.*, 585 S.W.2d 344 (Tex.Civ.App.—Austin 1979, no writ). Since the Appellant has not challenged the findings, indicating that consent was revoked as to the June 1, 1987, agreement, there was nothing preserved for this court to review.

After examining the record, we hold that consent given by the Appellant and the Appellee on June 1, 1987, was revoked and, therefore, we overrule Point of Error Number One.

As to the Appellant's second point of error, he claims that the trial court erred in assessing all federal income tax liabilities of the parties, from the date of marriage through December 31, 1986, against the Appellant.

■ The record clearly points out that there exists no agreement, on June 1, 1987, between the Appellant and the Appellee to divide tax liabilities. The Appellant and the Appellee had only agreed to divide tax refunds for 1986. The income tax liabilities of the Appellant and the Appellee merely became a factor to be considered by the trial judge at the September 6, 1988, court proceeding. It is well established in Texas that the trial court has wide discretion in determining the disposition of community property of the parties in a divorce action. Even though the trial court has broad discretion and may consider many factors in dividing the community property, it is directed by TEX.FAM.CODE ANN. § 3.63 (Vernon Supp.1991) to divide the property in a manner which is "just and fair". *See Murff v. Murff,* 615 S.W.2d 696, 699 (Tex. 1981).

■ A trial court's discretion will be overturned by an appellate court only if there is a clear indication that the trial court acted arbitrarily and unreasonably. *See Murff v. Murff, supra.* TEX.FAM.CODE ANN. § 3.63 (Vernon Supp.1991). As an intermediate appellate court, we are required to indulge every reasonable presumption or inference in favor of the trial court's proper exercise of discretion. *See LeBlanc v. LeBlanc,* 761 S.W.2d 450 (Tex. App.—Corpus Christi 1988, writ denied).

It was in *Murff, supra,* that the Texas Supreme Court concluded with the following observation:

The trial court in a divorce case has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic. As the trier of fact, the court is empowered to use its legal knowledge and its human understanding and experience. Although many divorce cases have similarities, no two of them are exactly alike.

Mathematical precision in dividing property in a divorce is usually not possible. Wide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse.

■ In addition, the Supreme Court has held that circumstances of each marriage dictate what factors the trial court will consider in dividing the community property. *See Young v. Young,* 609 S.W.2d 758 (Tex.1980). We are well aware of the many factors which the trial court considers daily in making "just and right" divisions. These factors include future needs for support; fault in the breakup of the marriage; disparity of incomes or of earning capacities; spouses' capacities and abilities; benefits the innocent spouse would have derived from the continuation of the marriage; business opportunities; education and training; relative physical conditions; relative financial conditions and obligations; disparity of ages; size of community estate; size of separate estate; expected inheritance of the spouses; nature of property; attorneys' fees; custody of children; reimbursement; gifts to a spouse during marriage; excessive community property gifts to others; wasting community assets; out-of-state property; tax consequences; and credit for temporary alimony paid. *See LeBlanc v. LeBlanc,* 761 S.W.2d 450, 452 (Tex.App.—Corpus Christi 1988, writ denied).

■ Repeatedly, appellate courts have held that tax consequences stemming from the division of property as well as any unpaid tax liabilities are proper factors to be considered by the trial court in deriving at a fair and just division of the community properties. *McCartney v. McCartney,* 548 S.W.2d 435 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ history). Furthermore, it is reversible error for a court to refuse to consider tax liability, particularly when it is substantial and one of the spouses is without means to pay the obligation. *See McCartney, supra; Cole v. Cole,* 532 S.W.2d 102 (Tex.Civ.App.—Dallas 1975) *aff'd* 568 S.W.2d 152 (1978).

The Appellee testified that she had only worked outside of the home for a total of five and one-half years during the time of their marriage. She had no special skills or profession. She was employed as a secretary at the time of the divorce. She had a net salary of $960.00 a month. She said, out of this money, she had to pay the house mortgage (which was $618.00 or $628.00 a month), all of its upkeep, groceries, house repairs and other expenses. The homestead was in need of major repairs, such as painting, inside and outside, recarpeting, new roof and plumbing. She said she could not afford to remain in the homestead with her present income so after about five months from June 1, 1987, to sometime in October, 1987, she moved out. Also, she had drained her bank account in trying to make repairs. She said she notified the Appellant about moving out of the homestead.

The Appellant was an airline pilot employed by Continental Airlines. He had been employed with this company for 22 years. His salary was between $60,000 and $70,000 a year. He brought home a net salary of $3,500 to $4,500 a month, plus the fueling of his automobile. He was paying $900 a month in child support. He also stated that he could pay off the tax debt. Also, he did not have a twenty thousand dollar pledge against any of his assets as did the Appellee. The Appellee had pledged her certificate of deposit for $50,-000 for a $24,000 loan. The loan was made to pay off a necessary car loan.

The trial court found that Appellant was well aware of the income tax liability and received notice of same from the Internal Revenue Service and also the Appellant took no steps to pay the income tax liability, including penalty and interest, when it was at its lowest amount, even though he had sufficient funds to do so. The trial court also found that Appellant could have paid the income tax liability, including penalty and interest, and could have requested entry of Decree of Divorce based upon the agreement of June 1, 1987, but did neither. Furthermore, the trial court found that once the Appellee had received notice of the tax liability, she delivered the notice to the Appellant. In addition, the trial court found that each party specifically repudiated that portion of the agreement of June 1, 1987, and such was allowed by the court on September 6, 1988, and repudiation of the June 1, 1987, agreement was evidenced by testimony in court on September 6, 1988, and by virtue of the fact that neither the Appellant nor the Appellee requested entry of a proposed Final Decree containing the terms pertaining to the tax matters. As well, the trial court found that the Appellant had intentionally and knowingly withheld information about personal income tax liability owed by the parties prior to and during settlement negotiations and for a period of time after June 1, 1987. Likewise, the trial court found that the personal income tax liability of Appellant and Appellee is derived from an investment by the Appellant into a tax shelter and this investment was made by the Appellant without the knowledge of the Appellee.

Moreover, the trial court found that the Appellee would not have agreed to be responsible for one-half of the personal income tax liabilities owed by the parties up through June 1, 1987, had the tax liability information been disclosed by the Appellant and this information was material. Over and above, the trial court found that the assessing of the personal income tax liabilities owed through June 1, 1987, as being the sole and separate responsibility and liability of the Appellant, was just and right having due regard for the rights of each party and the child.

More than that, after applying the facts and findings, the trial court concluded, as a matter of law, that the evidence was sufficient to justify and sustain the findings that (1) the Appellant invested in a tax shelter without disclosing same to the Appellee and that such investment was the contributing cause to the tax liabilities of the parties; (2) the Appellant had withheld from the Appellee information concerning the tax liability resulting from investment in the questionable tax shelter during negotiations prior to and through June 1, 1987; (3) the Appellee would not have agreed to be responsible for one-half of the personal

income tax liabilities owed by them up through June 1, 1987, had the tax liability information been disclosed by the Appellant; (4) the information was material; and (5) the assessing of personal income tax liabilities owed as being the sole and separate responsibility and ability of the Appellant.

In view of our determination that the tax liability was properly assessed against the Appellant, we overrule Point of Error Number Two. Applying the review principles previously set forth, and having read the statement of facts and finding the evidence supports the findings of fact and the conclusions of law, we affirm the trial court's judgment.

AFFIRMED.

BURGESS, Justice, concurring.

I concur with the affirmance. However, I do not adopt the majority's comment "the tax liability was properly assessed...." vis a vis point of error number two. While I agree the trial court did not abuse his discretion, it is not necessary to determine the propriety of the tax assessment in order to decide whether the trial court abused his discretion.