COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-06-368-CV

 

 

 

BASIL SCHABAN-MAURER                                                    APPELLANT

 

                                                   V.

 

ANNA MAURER-SCHABAN                                                     
APPELLEE

 

------------

 

FROM
THE 325TH DISTRICT COURT OF TARRANT COUNTY

 

------------

 

OPINION

 

------------

I.  Introduction

Appellant Basil
Schaban-Maurer appeals the trial court=s AFinal Decree
of Divorce.@ In three
issues, Basil alleges that the trial court erred by making a disproportionate
award of the community estate to Appellee Anna Maurer-Schaban, issuing a
protective order against Basil, and ordering Basil to pay $700 per month in
child support.  We will affirm.

 

 








II.  Factual and Procedural Background

Anna moved to the United
States in 1994 and married Basil soon after her arrival.  At the time, Basil had a bachelor=s and a master=s degree in
architecture.  After the two were
married, Anna attended college for approximately three years, during which time
Basil supported her by working as an architect for various firms in the
Dallas/Fort Worth area.  The same year
that Anna completed her education and entered the workforce, Basil stopped
working full-time and instead worked sporadically, never holding down a job for
more than one year and eventually giving up all efforts at obtaining
employment.  From 2000 up until the time
of the divorce in 2006, Basil did not earn a salary.  During that time, however, Basil entered a
Ph.D. program, taking approximately one class per semester. 

In 2002, the couple had their
first child.  Three years later, they had
their second child.  The trial court
heard testimony that, despite the fact Basil stayed at home, the children went
to daycare during the day and that Anna attended to the children and the
household chores after getting home from work. Furthermore, the trial court
heard and saw evidence of domestic abuse by Basil against Anna. 








Driven by her frustration at
Basil=s distaste for employment, failure to contribute to the family unit,
and domestic violence, Anna filed for divorce in late 2005.  Fearing that leaving Basil and taking the
children would spark more domestic violence, Anna also sought a protective
order, which was granted in November 2005.[1]

In September 2006, the trial
court conducted proceedings to determine the terms of the final divorce
decree.  At the conclusion of these
proceedings, the trial court awarded a disproportionate amount of community
property to Anna and ordered Basil to pay $700 per month for child support.  Basil now appeals.

III. 
Disproportionate Community Property Award to Wife

 

In his first issue, Basil
contends that the trial court abused its discretion by making a
disproportionate community property award to Anna.

A.  Standard of Review








In a divorce proceeding, the
trial court is charged with dividing the community estate in a Ajust and right@ manner,
considering the rights of both parties.  Tex. Fam. Code Ann. ' 7.001 (Vernon Supp. 2006); Boyd v. Boyd, 131 S.W.3d 605, 610
(Tex. App.CFort Worth
2004, no pet.).  Trial courts are
afforded wide discretion in dividing marital property upon divorce; therefore,
a trial court=s property
division may not be disturbed on appeal unless the complaining party
demonstrates from evidence in the record that the division was so unjust and
unfair as to constitute an abuse of discretion. 
Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985); Boyd,
131 S.W.3d at 610.

To determine whether a trial
court abused its discretion, we must decide whether the trial court acted
without reference to any guiding rules or principles; in other words, we must
decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986).  We must indulge every reasonable
presumption in favor of the trial court=s proper exercise of discretion in dividing marital property.  Boyd, 131 S.W.3d at 610.   Accordingly, we will reverse only if the
record demonstrates that the trial court clearly abused its discretion, and the
error materially affected the just and right division of the community estate.[2]  Id.








B.  Factors for Determining Community Property
Division

In exercising its discretion,
the trial court must order an equitable, but not necessarily equal, division of
the community estate. Tenery v. Tenery, 932 S.W.2d 29, 29 (Tex. 1996); Taylor
v. Taylor, No. 02-05-00435-CV, 2007 WL 2460359, at *9 (Tex. App.CFort Worth, Aug. 31, 2007, no pet. h.) (mem. op.).  In dividing the estate, the trial court can
consider a variety of factors, and it is presumed that the trial court
exercised its discretion properly.  Bell
v. Bell, 513 S.W.2d 20, 22 (Tex. 1974); Campbell v. Campbell, 625
S.W.2d 41, 43 (Tex. App.CFort Worth
1981, writ dism=d).

Some of the factors the trial
court can consider include the spouses= capacities and abilities, benefits which the party not at fault would
have derived from continuation of the marriage, business opportunities,
education, relative physical conditions, relative financial condition and obligations,
size of the separate estates, and the nature of the property.  See Schlueter v. Schlueter, 975 S.W.2d
584, 588 (Tex. 1998); Murff v. Murff, 615 S.W.2d 696, 699 (Tex.
1981).  








In addition to the factors
set forth in Murff, the trial court may also consider fraud on the
community, wasting of community assets, child custody, and fault in the breakup
of the marriage.  Baccus v. Baccus,
808 S.W.2d 694, 700 (Tex. App.CBeaumont 1991, no writ); see Massey v. Massey, 807 S.W.2d 391,
401-02 (Tex. App.CHouston [1st
Dist.] 1991, writ denied); Eikenhorst v. Eikenhorst, 746 S.W.2d 882, 890
(Tex. App.CHouston [1st
Dist.] 1988, no writ).  Additionally,
although retirement benefits earned during marriage are generally community
property that is subject to division, the trial court, in its discretion, may
award such benefits to the party who earned them.  See Haynes v. McIntosh, 776 S.W.2d 784,
788 (Tex. App.CCorpus
Christi 1989, writ denied); Hardin v. Hardin, 681 S.W.2d 241, 243 (Tex.
App.CSan Antonio 1984, no writ); Shields v. Shields, No.
09-06-00334-CV, 2007 WL 2683524, at *2 (Tex. App.CBeaumont Sept. 13, 2007, no pet. h.) (mem. op.).

C.  Disproportionate Community Property Award to
Anna








In its findings of fact for
this case, the trial court listed several factors it considered in dividing the
property, including fault in the breakup of the marriage, fraud on the
community, wasting of community assets by the spouses, and actual and
constructive fraud committed by a spouse.[3]  The trial court based these findings on
testimony from Anna, Basil, and additional witnesses.  First, Basil testified that he had a master=s degree in architecture and was pursuing a Ph.D. in urban
administration.  Despite his high level
of education, Basil and Anna both testified that Basil had not been employed
since 2000 and that Basil=s employment
prior to 2000 was sporadic.  Basil did
not controvert Anna=s testimony
that he was mentally and physically capable of working. 

Furthermore, the trial court heard testimony about potential fraud on
the community estate committed by Basil. 
Anna testified about a community account that she maintained in her name
with her wages.  She said that Basil had
secretly accessed, withdrawn, and hidden $22,000 from the account, refusing to
share it with Anna.  In his testimony,
Basil never disputed that he had the money and had refused to share it, he only
disputed how he came into possession of the money, alleging that Anna had
transferred it into his account on her own free will but then changed her mind
and wanted it back. 

Additionally, Anna alleged that Basil had approximately $19,000 in
cash stored in a cabinet, along with several valuable items of jewelry and
household items, which, according to Anna, had a total value of approximately
$15,000.  Basil denied the existence of
the $19,000 and said that, for the most part, Anna was in possession of the
jewelry and household items. 








Finally, the trial court heard testimony about Anna=s retirement account, which constituted a large part of the property
division awarded to Anna.  Anna=s uncontroverted testimony was that she had built up the retirement
account with her wages.  Basil
additionally had retirement accounts in his name, though there was no testimony
as to how those accounts were funded.[4]


Indulging every reasonable
presumption in favor of the trial court=s ruling, we cannot say that, given this testimony, the trial court
abused its discretion.  The trial court,
as the sole judge of the witnesses= credibility, could have believed Anna and not believed Basil
regarding the $22,000 from the bank account, $19,000 in the cabinet, and
$15,000 of jewelry and household items.[5]  Because the trier of fact is in a better
position to determine the candor, demeanor, and credibility of the witnesses,
we will not substitute our judgment for that of the trial court.  See Garner v. Garner, 200 S.W.3d 303,
308 (Tex. App.CDallas 2006,
no pet.).








Furthermore, the trial court
acted in its discretion by awarding retirement benefits earned during the
marriage to the party who earned them, thus giving Anna=s retirement account to her and Basil=s retirement accounts to him.  See
Haynes, 776 S.W.2d at 788; Hardin, 681 S.W.2d at 243; Shields,
2007 WL 2683524, at *3.  Because the
trial court acted within its discretion, we overrule Basil=s first issue.

IV.  Protective Order

In his second issue, Basil
argues that the trial court erred by granting the protective order because no
evidence was presented that family violence would occur in the future.[6]

A.  Mootness








Because the protective order
of which Basil complains expired on October 24, 2006, our first determination
must be whether this issue is moot.  The
general rule is that a case becomes moot, and thus unreviewable, when it appears
that a party seeks to obtain relief on some alleged controversy when in reality
none exists.  Williams v. Lara, 52
S.W.3d 171, 184 (Tex. 2001); State for Protection of Cockerham v. Cockerham,
218 S.W.3d 298, 301 (Tex. App.CTexarkana 2007, no pet.); Sutton v. Sutton, No. 02-05-00052-CV,
2005 WL 1993410, at *1 (Tex. App.CFort Worth Aug. 18, 2005, no pet.) (mem. op.).  If a case becomes moot, the parties lose
their standing to maintain their claims. 
Williams, 52 S.W.3d at 184; Sutton, 2005 WL 1993410, at
*1.

One of the major exceptions
allowing an appellate court to review a case after it becomes moot is the
collateral consequences exception.  FDIC
v. Nueces County, 886 S.W.2d 766, 767 (Tex. 1994).  Under this exception, the party must show
that prejudicial events have occurred that will continue to stigmatize that
person long after the judgment has ceased to operate.  Gen. Land Office v. OXY U.S.A., Inc.,
789 S.W.2d 569, 571 (Tex. 1990); In re Cummings, 13 S.W.3d 472, 475
(Tex. App.CCorpus
Christi 2000, no pet.).








Generally, expired temporary
protective orders are considered moot on appellate review.  James v. Hubbard, 21 S.W.3d 558, 560
(Tex. App.CSan Antonio
2000, no pet.).  However, a protective
order based on a finding of family violence carries a social stigma even after
the order has expired.  Cockerham,
218 S.W.3d at 302; Ex parte Flores, 130 S.W.3d 100, 105 (Tex. App.CEl Paso 2003, no pet.); James, 21 S.W.3d at 560; In re
Cummings, 13 S.W.3d at 475. 
Furthermore, there are attendant legal consequences to being the subject
of such a protective order; Texas Family Code section 153.004 mandates that a
trial court must consider the issuance of a protective order in determining
child custody.  Tex. Fam. Code Ann. ' 153.004(f) (Vernon Supp. 2006).

The protective order against
Basil has expired.  Thus, no actual
controversy now exists between Basil and Anna regarding its enforceability, and
that issue is moot.  However, under the
collateral consequences exception, we review the substance of this issue.

B.  Standard of Review

While there is a split among
the courts of appeals, in this court we review appellate challenges to the
granting of protective orders for sufficiency of the evidence, measured by
legal and factual sufficiency contentions. 
See Jakobe v. Jakobe, No. 02-04-00068-CV, 2005 WL 503124, at *1
(Tex. App.CFort Worth
2005, no pet.) (mem. op.).  Compare
Vongontard v. Tippit, 137 S.W.3d 109, 112-13 (Tex. App.CHouston [1st Dist.] 2004, no pet.), and B.C. v. Rhodes, 116
S.W.3d 878, 883-84 (Tex. App.CAustin 2003, no pet.) (both applying legal and factual sufficiency
standards of review), with Thompson v. Thompson-O=Rear, No. 06-03-00129-CV, 2004 WL
1243080, at *2 (Tex. App.CTexarkana
June 8, 2004, no pet.) (mem. op.) (acknowledging that other courts apply legal
and factual sufficiency standard of review, but applying abuse of discretion
standard of review).








A legal sufficiency challenge may only be sustained when
(1) the record discloses a complete absence of evidence of a vital fact, (2)
the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact, (3) the evidence offered to prove
a vital fact is no more than a mere scintilla, or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L. REV. 361, 362-63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable fact-finder could, and disregard evidence contrary to the finding
unless a reasonable fact-finder could not. 
City of Keller v. Wilson, 168 S.W.3d
802, 827
(Tex. 2005). 








Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  When
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more
than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002).

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

C.  Determining Family Violence

A trial court shall render a
protective order if, after a hearing, it finds that family violence has
occurred and is likely to occur in the future. 
Tex. Fam. Code Ann. '' 81.001, 85.001 (Vernon 2002).  AFamily violence@ means

an
act by a member of a family or household against another member of the family
or household that is intended to result in physical harm, bodily injury,
assault, or sexual assault or that is a threat that reasonably places the
member in fear of imminent physical harm, bodily injury, assault, or sexual
assault, but does not include defensive measures to protect oneself.

 

Id. ' 71.004(1).








Basil limits this issue to
the evidence supporting the trial court=s finding that family violence is likely to occur in the future.  Because the record does not contain evidence
specifically related to Basil=s likelihood of future violence, the central focus for this issue is
whether evidence of past family violence will support a finding that future
family violence is likely.  








Case law over the past decade
indicates the development of the principle recognizing that evidence a person
has engaged in abusive conduct in the past permits an inference that the person
will continue violent behavior in the future. 
See In re Epperson, 213 S.W.3d 541, 543 (Tex. App.CTexarkana 2007, no pet.); In re T.L.S., 170 S.W.3d 164, 166
(Tex. App.CWaco 2005,
no pet.); In re M.G.M., 163 S.W.3d 191, 202 (Tex. App.CBeaumont 2005, pet. denied); In re K.A.S., 131 S.W.3d 215,
223-25 (Tex. App.CFort Worth
2004, no pet.); Ulmer v. Ulmer, 130 S.W.3d 294, 300-01 (Tex. App.CHouston [14th Dist.] 2004, no pet.). Initially, trial courts relied on
evidence of past violence as an indicator of future behavior in parental
termination and child custody cases.  See
In re T.L.S., 170 S.W.3d at 166; In re A.T., No. 02-04-00355-CV,
2006 WL 563565, at *7 (Tex. App.CFort Worth Mar. 9, 2006, no pet.) (mem. op.).  Appellate courts have extended the principle
to family violence protective order cases. 
See In re Epperson, 213 S.W.3d at 543; In re M.G.M., 163
S.W.3d at 202; Ulmer, 130 S.W.3d at 299; Pena v. Garza, 61 S.W.3d
529, 532 (Tex. App.CSan Antonio
2001, no pet.); Banargent v. Brent, No. 14-05-00574-CV, 2006 WL 462268,
at *1 (Tex. App.CHouston
[14th Dist.] Feb. 28, 2006, no pet.) (mem. op.).

In other cases, appellate
courts have relied on a pattern of past violence to support a trial court=s finding of likely future violence. 
In one case, the appellate court relied on a girlfriend=s testimony that her boyfriend, against whom she sought the protective
order, was Acontrolling
and threatening@ over the
length of their relationship, which was less than one year.  In re Epperson, 213 S.W.3d at
543.  In that case, the boyfriend
physically assaulted his girlfriend twice and left her threatening notes.  Id. 


In another case, the
appellate court relied on a wife=s testimony that the husband was emotionally, mentally, and physically
abusive for several years.  In re
M.G.M., 163 S.W.3d at 202.  Another
trial court relied on testimony that a husband had threatened to kill his wife,
had stalked her after the divorce, had expressed a great deal of anger towards
her, and had frequently yelled at her.  Ulmer,
130 S.W.3d at 300.  In both of these
cases, the husbands adamantly insisted that they had not ever committed any act
of violence against their respective wives. 
In re M.G.M., 163 S.W.3d at 202; Ulmer, 130 S.W.3d at 299.








These cases stand in stark
contrast to the case relied on by Basil, In re J.A.T.,  No. 13-04-00477-CV, 2005 WL 1981497, at
*1 (Tex. App.CCorpus
Christi Aug. 18, 2005, no pet.) (mem. op.). 
In that case, the wife presented one instance where the husband pulled
the child out of the wife=s arms,
resulting in the child being pulled between the two.  Id. 
The appellate court found that this single act alone was insufficient to
support a protective order against the husband as evidence of the likelihood of
future violence.  Id.

D.  Imposition of the Protective Order Against
Basil

In contrast to the wife in In
re J.A.T., Anna presented evidence of a pattern of violence from
Basil.  Anna stated that in January 2003,
Basil had pushed her into a wall and hit her shoulder so hard that it bruised;
Anna supported her assertion with pictures. 
Furthermore, Anna testified regarding two instances where Basil
attempted to rape her.  








After Anna moved out and
sought a divorce, Basil stalked Anna from their daughter=s daycare to her new apartment, where he took their son from Anna=s car.  Anna also testified that
on two occasions, when they were exchanging the children, Basil kicked in the
door of her apartment.  On one of these
occasions, she said that after kicking in the door, Basil shoved her into a
wall, grabbed her arm, held onto the phone (thereby preventing her from calling
the police), and finally threw the phone at her, causing bruises that Anna had
taken pictures of.  In addition to these
acts, Anna also testified to numerous occasions when Basil was verbally
abusive, shouting obscenities at her and calling her foul names in the presence
of the children.  All of these instances
led her to be afraid of Basil.  Basil
denied all of Anna=s
accusations. 

Based on this record, we hold
that the evidence was legally and factually sufficient to support the trial
court=s granting of the protective order. 
First, taking all inferences in favor of the trial court=s finding, we conclude that based on Anna=s testimony describing a pattern of physical and verbal assaults from
Basil, there was more than a scintilla of evidence that Basil would continue acting
violently toward Anna.[7]  It was for the trial court alone to determine
the credibility of the witnesses, and the trial court could have disregarded
Basil=s denials in their entirety.  See
Garner, 200 S.W.3d at 308 (stating that the trial court has the sole
discretion to believe one party=s evidence and not accept the other party=s evidence).  Therefore, it was
reasonable for the trial court to conclude that Basil would commit or threaten
to commit further acts of family violence. 








Moreover, considering all of
the evidence supporting the finding, we cannot say that the evidence was
factually insufficient to support the trial court=s decision.  The evidence
supporting Anna=s
accusations, including her testimony and pictures, along with the testimony of
witnesses to the violence, in contrast to Basil=s denials, was not so weak to support the finding or so against the
overwhelming weight of the evidence as to be manifestly unjust.   Garza, 395 S.W2d at 823.  We therefore overrule Basil=s second issue.

V.  Child Support Calculations

In his third issue, Basil
argues that the trial court abused its discretion by assessing his monthly
child support payments at $700.  

A.  Standard of Review








We review the trial court=s order setting child support under the same abuse of discretion
standard as applied to the trial court=s property division.  Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  If there is some probative and substantive
evidence to support the child support judgment, the trial court did not abuse
its discretion.  In re P.J.H., 25
S.W.3d 402, 405 (Tex. App.CFort Worth 2000, no pet.); DuBois v. DuBois, 956 S.W.2d 607,
610 (Tex. App.CTyler 1997,
no pet.) (citing Holley v. Holley, 864 S.W.2d 703, 706 (Tex. App.CHouston [1st Dist.] 1993, writ denied)).  We will not revise the trial court=s judgment merely because we consider the amount of the child support
award either too high or too low.  In
re P.J.H., 25 S.W.3d at 405.

B.  Determining Child Support
With an Unemployed or Underemployed      Parent

 

The duty to support a child
is not limited to a parent=s ability to pay from current earnings but extends to his or her
financial ability to pay from any and all sources that might be available.  In re Z.B.P., 109 S.W.3d 772, 783
(Tex. App.CFort Worth
2003, no pet.); In re P.J.H., 25 S.W.3d at 406.  Thus, if a parent=s actual income is significantly less than what he or she could earn
because of intentional unemployment or underemployment, the trial court may
apply the child support guidelines to that parent=s earning potential.  Tex. Fam. Code Ann. ' 154.066 (Vernon Supp. 2006); Logan v. Logan, No.
02-05-00068-CV, 2006 WL 2167164, at *6 (Tex. App.CFort Worth 2006, no pet.) (mem. op.). 









A parent who is qualified to
obtain gainful employment cannot evade his or her support obligation by voluntarily
remaining unemployed or underemployed.  Logan,
2006 WL 2167164, at *6; Eggemeyer v. Eggemeyer, 535 S.W.2d 425, 427-28
(Tex. Civ. App.CAustin
1976), aff=d, 554 S.W.2d 137 (Tex. 1977). 
Therefore, a trial court may order a parent to pay child support beyond
the amount the parent=s income
would ordinarily indicate under the guidelines if the parent could potentially
earn more money but has intentionally chosen not to.  See Tex.
Fam. Code Ann. ' 154.066;
Beach v. Beach, No. 05-05-01316-CV, 2007 WL 1765250, at *3 (Tex. App.CDallas June 20, 2007, no pet.) (mem. op.).

For a trial court to find
that a parent is intentionally underemployed or unemployed under section
154.006, there must be evidence that the parent reduced his or her income for
the purpose of decreasing child support payments.  In re Z.B.P., 109 S.W.3d at 783; In
re P.J.H., 25 S.W.3d at 405-06.  The
requisite intent to be underemployed for the purpose of decreasing child
support payments, however, may be inferred from such circumstances as the
parent=s education, economic adversities and business reversals, business
background, and earning potential.  In
re Z.B.P, 109 S.W.3d at 783; In re P.J.H., 25 S.W.3d at 406.  








Litigants have presented
trial courts with a variety of cases in which the obligor parent was
intentionally unemployed or underemployed. 
In one case, the obligor parent was unemployed for the five years
preceding the hearing.  Pharo v. Trice,
711 S.W.2d 282, 284 (Tex. App.CDallas 1986, no writ).  As an
explanation for her unemployment, the parent said that she was busy researching
genealogy, working with the library, playing tennis, and helping put together a
cookbook.  Id.  The appellate court held that the trial court
did not abuse its discretion by determining that the parent was intentionally
unemployed.  Id.

In another case, the obligor
parent argued that because the record showed neither a history of her actual earnings
nor evidence of her capacity to earn a substantial sum of money, the trial
court erred by determining child support based on her earning potential.  Giangrosso v. Crosley, 840 S.W.2d 765,
769 (Tex. App.CHouston [1st
Dist.] 1992, no writ).  In that case, the
parent had completed three years of college and, according to the appellate
court, probably would have needed retraining before entering the workforce.  Id. 
The appellate court held, however, that the parent possessed general
skills and experience that would qualify her for employment.  Id. 
Therefore, it was not a abuse of discretion for the trial court to find
that a parent=s choice to
remain unemployed was not a valid excuse for avoiding child support
obligations.  Id.

In comparison to these cases,
our court has determined that a finding of voluntary underemployment was an
abuse of discretion when the obligor was a high school dropout with a GED,
expected to earn minimum wage, and remained unemployed to take care of her
children and elderly parents.  In re
Z.B.P., 109 S.W.3d at 783.

 








C.  Child Support Upon a Determination of Basil=s Underemployment

In finding of fact number
nine, the trial court stated the following:

The Court finds that Basi[l] Schaban-Maurer is
voluntarily underemployed and that if he were employed he would be capable of
earning no less than $40,000 per year. 
The amount of child support ordered by the Court is in accordance with
the percentage guidelines for an obligor earning $40,000 per year with
adjustments made to address Anna Mauer-Schaban having to provide health and
dental insurance coverage for the children. 

 

In this case, Basil complains
that the trial court did not have sufficient information upon which to
calculate his net resources, resulting in an arbitrary child support
calculation.  The evidence showed,
however, that Basil has a master=s degree in architecture and had enrolled in a Ph.D. program for urban
administration.  Anna=s uncontroverted testimony was that Basil had, in fact, worked as a
full-time architect in approximately 1997 or 1998 and had been paid an annual
salary of $40,000.  An architect, who
knew the job market for architects in 1997 and 1998, testified that the market
in the late 1990s was excellent and that there were a variety of employment
opportunities available. 








Basil never explained why he
stopped working in 1997 or 1998 (four years before Anna gave birth to their
oldest child), but Anna testified that he simply liked sleeping late into the
day, watching television, playing on the computer all night, and not having to
go to a job.  Anna testified, and Basil
never refuted, that there was no reason, physically or mentally, Basil could
not maintain employment.  Even after the
children were born, Anna=s testimony
was that Basil=s only
obligation to the children was to take them to daycare in the morning before
returning home and going back to bed. 
Furthermore, Anna testified that the housekeeping and cooking were her
responsibilities after picking up the children from daycare at the end of her
workday. 

Since the birth of his children,
Basil has contributed little to their financial support because he has chosen
to remain unemployed.  Anna has been the
sole financial provider for the children=s living, medical, dental, daycare, and other expenses.  The trial court heard testimony that the
couple=s oldest child was born with a birth defect requiring several
surgeries and ongoing medical treatments, all of which Anna has paid for and
will continue to pay for with insurance she must purchase from her employer
under the trial court=s final
divorce decree. 

Moreover, while Basil failed
to present evidence of his income, the trial court heard evidence as to his
expenses, which were approximately $4,199 per month apart from the expenses
associated with the divorce proceedings. 
Basil could not account for how he paid for these expenses, except to
say that his father had paid his attorney=s retainer fee. 








Indulging every presumption
in favor of the trial court=s judgment, we conclude that there is some probative and substantive
evidence supporting the trial court=s finding that Basil was underemployed and had an earning potential of
$40,000 per year.  See In re P.J.H.,
25 S.W.3d at 405.  Therefore, we hold
that the trial court did not abuse its discretion by ordering Basil to pay $700
per month in child support.  We overrule
Basil=s third issue.

VI.  Conclusion

Having overruled all three of
Basil=s issues, we affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL B: LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: October 11, 2007











[1]Basil
appealed the associate judge=s decision granting the
protective order.  The trial court
affirmed the associate judge=s decision in late November
2005 after a hearing.  





[2]When
an appellant challenges a property division, we will usually first determine
whether the trial court had sufficient evidence upon which to exercise its
discretion before evaluating whether the trial court abused that
discretion.  Boyd, 131 S.W.3d at
610; In re T.D.C., 91 S.W.3d 865, 872 (Tex. App.CFort
Worth 2002, pet. denied) (op. on reh=g).  Here, however, Basil has waived this issue in
his brief, saying, AAppellant
does not challenge the initial question of whether the trial court had
sufficient evidence or information upon which to exercise its discretion.@  Therefore, we will proceed to an evaluation
of whether the trial court abused its discretion.





[3]A
trial court can consider additional factors not listed in Murff.  Baccus, 808
S.W.2d at 700.  The trial
court in this case did rely on such additional factors, but Basil=s
brief addresses only the Murff factors. 





[4]Because Basil refused to file an
inventory with the trial court, only Anna=s approximations in her inventory were available for review
by the trial court.

 





[5]Contrary to Basil=s
calculations, the trial court did not award Anna ninety-one percent of the
community estate.  Basil=s
calculations failed to take into account the fact that all of the community
debt was awarded to Anna and that Basil retained possession of a car.  Furthermore, while Basil claims in his brief
on appeal that his calculations are based on values taken from Anna=s
inventory, Basil fails to compute the value of the property Anna claims, in her
inventory, to have left with Basil. 





[6]In his AIssues
Presented@
section, Basil additionally argues that the trial court erred because there was
insufficient evidence of past family violence. 
His AArgument@
section for this issue, however, deals only with the issue of no evidence of
future family violence.  Therefore, we
focus on evidence of future violence.  We
note that evidence of past violence is found throughout the record, as set
forth in subsection D of this issue.





[7]In fact, Basil did
continue to act violently toward Anna after the trial court granted the
protective orderCspitting
in her face while exchanging the children at the police station and making an
obscene gesture in her direction during a break at the divorce proceedings
themselves.