In The 



Court of Appeals



Ninth District of Texas at Beaumont


________________



NO. 09-08-00517-CV


 _____________________



KAREN A. QUIGLEY, Appellant



V.



GARY WILLMORE, Appellee







On Appeal from the 253rd District Court


Liberty County, Texas


Trial Cause No. CV72197







MEMORANDUM OPINION


 Appellant Karen Quigley appeals from the trial court's judgment dividing marital
property and determining child custody. In four issues Quigley challenges (1) the trial
court's jurisdiction over the conservatorship, custody, and possession of R.R.Q.W.; (2) the
trial court's failure to file findings of fact and conclusions of law despite a timely request;
(3) the sufficiency of the evidence supporting the judgment; and (4) the inclusion of an
income tax provision in the final divorce decree. We affirm the granting of the divorce,
reverse the remainder of the judgment, and remand the case for further proceedings
consistent with this opinion.

Background

 Karen Quigley and Gary Willmore married in Canada in 1999. That year, their child,
R.R.Q.W., was born. From the time of R.R.Q.W.'s birth to August 2005, Quigley and
R.R.Q.W. lived in Canada. For the majority of this period, Willmore did not live with
Quigley and R.R.Q.W. due to his employment which required him to travel to the United
States and other countries. 

 After experiencing difficulties with their marriage, Quigley and Willmore agreed to
try living together in Texas. Quigley and R.R.Q.W. moved to Liberty County in August 2005
to live with Willmore on property the couple purchased in 2004 as rental property. They
continued to maintain their home in Canada. From August 2005 until June 2006, Quigley
and R.R.Q.W. lived with Willmore. R.R.Q.W. attended kindergarten in Liberty County. 
Willmore and Quigley continued having marital problems, and on June 2, 2006, Quigley and
R.R.Q.W. moved back to Canada.

 On November 7, 2006, Quigley filed for divorce in Canada. Willmore filed for
divorce in Texas the same day he was served with the Canadian divorce petition. Quigley
filed a special appearance with the Texas court. Temporary orders signed by the Texas court
appointed Willmore and Quigley joint managing conservators of R.R.Q.W. and required
Willmore to pay $1,050 monthly in child support, with a credit of up to $400 towards the
monthly amount if Willmore purchased plane tickets for visits with R.R.Q.W. The trial court
denied Quigley's plea to the jurisdiction and her motion asking the Texas trial court to
relinquish jurisdiction as an inconvenient forum.

 The Canadian court dismissed Quigley's first divorce proceeding because she did not
meet the residency requirement for filing for divorce in Canada. She refiled her petition. In
July 2008, the Canadian court signed an Interim Order acknowledging the parallel
proceeding in Texas. The order stated "that on December 20, 2007 the Liberty 253rd District
Court, Texas, USA heard matters involved in this same proceeding in its jurisdiction and
observed that the Nova Scotia Court would be taking jurisdiction of the custody access
issues[,]" and that Nova Scotia was exercising jurisdiction with respect to custody and access
regarding R.R.Q.W. The order gave Quigley sole custody, primary care, and control of
R.R.Q.W. The order also provided terms for Willmore's access to R.R.Q.W. and allowed
for visits between Willmore and R.R.Q.W. on certain dates in Canada or Texas through
December 2008. Quigley filed the Canadian interim order with the Texas court.

 Quigley did not attend the Texas divorce trial in August 2008, but her counsel
announced "not ready" and stated Quigley had instructed him to withdraw. Willmore
appeared pro se. The trial court denied counsel's motion to withdraw and proceeded with
the trial. The Texas judgment grants the divorce, appoints Willmore and Quigley joint
managing conservators of R.R.Q.W., requires Willmore to pay $1,050 monthly in child
support, gives Quigley the exclusive right to determine R.R.Q.W.'s primary residence within
Novia Scotia, provides for visits between R.R.Q.W. and Willmore, divides the marital
estate, (1) and requires Willmore and Quigley to each file an individual income tax return in
accordance with the United States Internal Revenue Code.

Jurisdiction Over Conservatorship, Custody, and Possession

 In Quigley's first issue, she challenges the trial court's exercise of jurisdiction over
the issues of conservatorship, custody, and possession of R.R.Q.W. In June 2008, Willmore
filed a Notice of Withdrawal of Requested Relief with the trial court stating that he
"withdraws his requested relief from this Court in regard to conservatorship, access and
possession" of R.R.Q.W., "agrees to defer to the Canadian Court's jurisdiction in regards to
those issues only[,]" but "does not waive his requests to have this Court decide all issues of
child support, property division, grounds for divorce, or other issues not involving
conservatorship, access and possession." At trial, Willmore acknowledged that the Canadian
court had "take[n] jurisdiction over [R.R.Q.W.] and his welfare" and that Willmore "agreed
to that . . . [and had] no issue with that." During the trial, the trial court clarified that
Willmore was not seeking an order regarding R.R.Q.W.:

 THE COURT: Are you not attempting to seek any orders regarding your 

 child here or are you --

 WILLMORE: No, sir. . . . I believe I put with the Court . . . a document
that -- that the court of Texas does not have jurisdiction
over [R.R.Q.W.] and that I fought in the court in Canada
over that issue.

 THE COURT: And has that court entered orders regarding visitation
with your child?

 WILLMORE: It's been temporary visitations until December 2nd.

 THE COURT: And are you asking this Court to adopt whatever the
Canadian visitation orders?

 WILLMORE: I am, sir. . . . 


 In addition to granting the divorce and dividing the majority of the marital property,
the court orally pronounced at the end of the hearing that the Canadian orders regarding
visitation would continue in full force and effect and that the Canadian orders regarding
custody would also continue and be included in the Texas trial court's order. The trial court
instructed Willmore to hire an attorney to prepare the divorce decree in accordance with the
trial court's rulings.

 The final judgment signed by the Texas court appointed Willmore and Quigley joint
managing conservators of R.R.Q.W. and set out their rights and duties. The judgment gave
Quigley exclusive right to designate R.R.Q.W.'s primary residence within Nova Scotia. The
judgment also stated "The Court further finds that the following orders from the Canadian
Court regarding possession of and access to the child remain in full force and effect, are in
the best interest of the child as follows[,]" and then essentially quotes much of the Canadian
interim order as to custody and possession. Certain portions of the Canadian interim order
were not included and other provisions were added, however. 

 Willmore consented to Canada's exercise of jurisdiction over the conservatorship,
custody, and possession regarding R.R.Q.W. and withdrew his request that the Texas court
resolve those issues. See Tex. Fam. Code Ann. § 152.207(b)(5) (Vernon 2008) (In
determining whether the state is an inconvenient forum, a court considers "any agreement
of the parties[.]"). Considering also the length of time the child has resided outside Texas,
the distances involved, and the other factors a trial court is to consider pursuant to section
152.207(b), the Canadian court is the more appropriate forum to resolve the child custody
issues in this case. See Tex. Fam. Code Ann. § 152.207(b). It appears from the record that
the trial court intended to give full force and effect to the Canadian order. However, the final
judgment conflicts in part with the order of the court in Canada. We sustain Quigley's first
issue to the extent she asserts that, as an inconvenient forum, the trial court should have
declined to exercise jurisdiction over the child custody issues. See Tex. Fam. Code. Ann.
§ 152.207(c), (d) (Vernon 2008). 

Findings of Fact and Conclusions of Law

 In Quigley's second issue, she contends the trial court failed to make findings to
support its child support order despite a timely request. Tex. Fam. Code Ann. §
154.130(a)(3), (b) (Vernon Supp. 2009). She further argues that there is no evidence to
support the amount the trial court awarded in monthly child support. 

 For purposes of determining child support liability, the trial court calculates net
resources, including all wage and salary income and other compensation for personal
services, interest, dividends, and royalty income, self-employment income, net rental income,
and all other income actually being received. Tex. Fam. Code Ann. § 154.062(a),(b); see
also Tex. Fam. Code Ann. § 154.130(b) (Vernon Supp. 2009). The trial court is required
to make findings when (1) a party files a written request with the court not later than ten days
after the date of the hearing, (2) a party makes an oral request in open court during the
hearing, or (3) the amount of child support ordered by the court varies from the amount
computed by applying the percentage guidelines. Tex. Fam. Code Ann. § 154.130(a)(1)-(3)
(Vernon Supp. 2009). A trial court's failure to make these findings upon a timely or proper
request may constitute reversible error. In re S.B.S., 282 S.W.3d 711, 717 (Tex. App.--Amarillo 2009, pet. denied); Hanna v. Hanna, 813 S.W.2d 626, 628 (Tex. App.--Houston
[1st Dist.] 1991, no writ).

 Quigley's Request for Findings in Child Support Order, a document that Quigley says
she filed with the trial court on August 13, 2008, apparently was lost. Texas Rules of
Appellate Procedure 34.5(e) provides a means to have a missing or lost document placed into
the clerk's record when a party can provide an accurate copy. Tex. R. App. P. 34.5(e). 
Quigley sought a stipulation from Willmore that the copy she provided was an accurate copy
of the lost document. Willmore did not respond. Quigley then filed a Motion for
Determination on Lost Document in the trial court. See Tex. R. App. P. 34.5(c). Quigley
attached the following evidence to her motion: 

 the sworn affidavit of Quigley's attorney that the copy provided was an
accurate copy of Quigley's request for findings in child support order filed on
August 13, 2008; 


 a file stamped copy of the letter transmitting to the district court clerk
Quigley's request for findings in child support order, dated August 12, 2008,
and file-stamped August 13, 2008; 


 a Federal Express receipt showing that the district court clerk received the
envelope containing Quigley's request for findings in child support order; 


 a letter transmitting a copy of Quigley's request for findings in child support
order to Willmore with signed certified mail receipt and delivery date stamp
of August 20, 2008;


 a file-stamped copy of the Notice of Hearing for the trial court to consider
Quigley's request for findings in child support order with a signed certified
mail receipt from the district court clerk's office, and transmittal copies to
Willmore with a signed mail receipt; and


 a copy of the transcript from the September 4, 2008 hearing in which the trial 
court heard argument on Quigley's request for findings in child support order. 


At the hearing on Quigley's motion for determination on lost document, the trial court heard
testimony from a deputy district clerk that the filing letter had been located, but the document
could not be found, and that the document would not have been imaged by the clerk's office
because it had a line for the judge's signature to indicate that it had been called to his
attention. The deputy district clerk also testified that the clerk's office would not have file-stamped the document until the judge had acknowledged receipt of the document with his
signature. 

 Quigley offered the transcript of the September 4, 2008 hearing at which the trial
judge referenced the document. The trial court ruled, however, that there was no way to
determine that the copy provided by Quigley was an accurate copy, or that the document had
been filed.

 Although a trial court's rulings on questions of fact in the determination of lost
documents are regarded with great deference, the evidence indicates an accurate copy was
tendered in this case. See generally Johnson v. State, 176 S.W.3d 94, 96 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd) (almost total deference). More to the point, however,
the ultimate question here is whether any request for findings was made sufficient to trigger
the trial court's obligation to make findings under the Family Code. See Tex. Fam. Code
Ann. § 154.130(a)(1)-(3). In this case, a hearing was held concerning the request for
findings before the document was lost. While the court declined to address the merits of the
request at that time and ordered the parties to reset the hearing, the court discussed and
referenced on the record the request for findings of fact. Under the circumstances, the trial
court should have made the required findings. See id. 

 When findings are required to be made on child support orders, the Family Code
provides that a trial court make specific findings as to the monthly net resources of the
parents as well as what percentage of a parent's net resources is being applied for child
support among other things. See Tex. Fam. Code Ann. § 154.130(b). The failure by the trial
court to make the findings in this case was error. See Elmakiss v. Elmakiss, No. 12-06-00405-CV, 2008 WL 2358221 *13 (Tex. App.--Tyler June 11, 2008, no pet.) ("A trial court's
failure to make these findings upon a timely or proper request or variance constitutes
reversible error."); In re K.L.R., 162 S.W.3d 291, 309 (Tex. App.--Tyler 2005, no pet.)
(same); Hanna, 813 S.W.2d at 628 (trial court's failure to make findings on child support
order as required by Family Code was reversible error). (2) Quigley's second issue is sustained. 
Sufficiency Challenges 


 In her third issue, Quigley argues there is insufficient evidence to support the trial
court's judgment and findings that Willmore met the domiciliary and residency requirements
to maintain a suit for divorce, and in dividing the parties' marital estate. She argues the trial
court erred in refusing to file amended or additional findings of fact and conclusions of law
as she requested.

 A trial court's findings of fact are reviewed for factual sufficiency of the evidence
under the same legal standards as are applied to review jury verdicts for factual sufficiency
of the evidence. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). 
Findings may be overturned when they are so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 Quigley challenges the trial court's finding that Willmore met the domiciliary and
residency requirements to maintain a suit for divorce. The trial court included among its
findings of fact the finding that "[a]t the time of the filing of this suit, Gary Willmore had
been a domiciliary of Texas for six months and a resident of Liberty County for ninety days." 
A suit for divorce may not be maintained unless, at the time the suit is filed, the petitioner
or the respondent has been a Texas domiciliary for the preceding six-month period and a
resident of the county in which the suit is filed for the preceding 90-day period. Tex. Fam.
Code Ann. §§ 6.301, 6.302 (Vernon 2006).

 Willmore testified that he "live[s] at 814 County Road 2268 in Cleveland, Texas
77327" and has been "a resident in the State of Texas . . . since 1975." He testified he
considers Texas to be his domicile and residence and that it has been his residence "[a] total
of 30-32 years . . . other than a two-year period where [he] did live in Nova Scotia." He
testified he bought his Cleveland residence in Liberty County twenty-four years before trial. 
The finding that Willmore had been a domiciliary of Texas for six months and a resident of
Liberty County for ninety days is not so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust. 

 As to the findings on the division of the marital estate, Quigley maintains there is 
insufficient evidence to support the trial court's division. The trial court made the following
findings of fact as to the division of the marital estate:

 4. No disputed evidence was presented regarding the
characterization of each part[y']s assets, liabilities, claims and
offsets.

 5. No disputed evidence was presented regarding the value or
amount of the community estate's assets, liabilities, claims and
offsets.

 6. The parties had obtained and possessed community property and
debts. The community property and debts were divided in a just
and right manner in accordance with Texas Constitution, Article
16, Section 15, and the Texas Family Code, Section 3.

 7. The parties possessed separate property. Separate property was
awarded to that party so entitled pursuant to the Texas Family
Code.


 A trial court is charged with dividing the community estate in a just and right manner,
considering the rights of both parties. Tex. Fam. Code Ann. § 7.001 (Vernon 2006). 
Generally an appellate court presumes that a trial court acts properly in dividing property, and
the division will not be disturbed on appeal unless there is a clear showing of abuse of
discretion. Murff v. Murff, 615 S.W.2d 696, 699-700 (Tex. 1981). An abuse of discretion
will not normally be found unless the division is manifestly unfair. See Mann v. Mann, 607
S.W.2d 243, 245 (Tex. 1980). 

 The final divorce decree awarded Willmore property including certain personal
effects, a Ford F-350 truck, money in his bank accounts in his sole control, retirement and
other benefits from his employment, life insurance policies in his name, all investment
accounts in his name, 45 acres in Liberty County, and a $100,000 judgment against Quigley. 
Quigley was awarded her personal effects in her possession, all money in her bank accounts
in her sole control, all retirement and benefits from her employment, life insurance policies
in her name, and all investment accounts in her name. 

 According to the reporter's record from the trial, the $100,000 judgment against
Quigley "represent[ed] the value of the horses heretofore sold; and two saddles, an English
and Western saddle." Willmore testified they have $250,000 to $300,000 worth of horses
that they raised and brought from Nova Scotia to Texas. An owner may be qualified to
testify to the market value of his property. See Porras v. Craig, 675 S.W.2d 503, 504-05
(Tex. 1984). At the time of trial the horses were in Canada and Willmore claimed Quigley
had been selling them for $10,000 each, but that he had documentation that she had actually
sold them for "30-, 40-, 50,000 dollars apiece." He testified she still owned eighteen of them
at the time of trial. 

 Willmore did not introduce any documentary evidence regarding the value of the
horses and saddles or the actual sales price for the horses allegedly sold by Quigley. 
Willmore did not testify that he was familiar with the market value of the horses or saddles.

 To properly exercise its discretion in dividing community property, a value should be
placed on all the community assets and liabilities. See generally Finn v. Finn, 658 S.W.2d
735, 746-47 (Tex. App.--Dallas 1983, writ ref'd n.r.e.) (Because trial court must have all
property of the parties before it to make a just and right division, improper valuation of
husband's interest in law firm required remand of entire property division); see also Tex.
Fam. Code Ann. § 6.711(a)(2) (Vernon 2006). It is difficult to justify the use of a money
judgment to achieve an equitable division of the estate without proper evidence of the value
of the estate. Compare Hanson v. Hanson, 672 S.W.2d 274, 278 (Tex. App.--Houston [14th
Dist.] 1984, writ dism'd) (considering the nature and type of property in the estate in
determining whether use of money judgment appropriate to balance award of assets). No
evidence was presented as to the value of the majority of the marital property. Insufficient
evidence supports the $100,000 judgment against Quigley. 

 Generally, an appellate court does not render a different division or remand only
certain portions of the marital property for a new division; rather the court must remand the
entire community estate for a new division. See Jacobs v. Jacobs, 687 S.W.2d 731, 732-33
(Tex. 1985). The evidence in the record does not support the trial court's division of the
marital estate. For that reason, we sustain Quigley's third issue. (3)

Conclusion

 The trial court's granting of the divorce is affirmed. We reverse the judgment on all
other matters, and remand for further proceedings consistent with this opinion. See Dawson-Austin v. Austin, 968 S.W.2d 319, 328 (Tex. 1998) (reversing trial court's judgment except
as to grant of divorce); Fleming v. Fleming, 595 S.W.2d 199, 200 (Tex. App.--Waco 1980,
writ dism'd) (severing child support from granting of divorce).

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

 ________________________________ DAVID GAULTNEY

 Justice


Submitted on October 1, 2009

Opinion Delivered November 25, 2009 

Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. At trial, the trial court acknowledged it did not have jurisdiction over the couple's
Nova Scotia real property and the Texas judgment did not award the Nova Scotia real
property to either party.
2. The judgment must be reversed on other grounds and remanded for further
proceedings. We therefore do not abate the appeal for the correction of this error. See Tex.
R. App. P. 44.4. 
3. Because we are reversing the property division on other grounds, we need not address
Quigley's fourth issue. See Baccus v. Baccus, 808 S.W.2d 694, 700 (Tex. App.--Beaumont
1991, no writ) (tax consequences stemming from the division of property as well as any
unpaid tax liabilities are appropriate factors for a trial court to consider in determining a fair
and just division of the community properties).